UNITED STATES, Appellant,

v.

**Harold Roscoe JONES, Appellee.**

**No. 5507.**

District of Columbia Court of Appeals.

Argued Jan. 11, 1971.

Decided March 31, 1971.

C. Madison Brewer, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Robert P. Watkins, Asst. U. S. Attys., were on the brief, for appellant.

Blaine P. Friedlander, Washington, D. C., with whom Mark P. Friedlander, Mark P. Friedlander, Jr., Harry P. Friedlander and Marshall H. Brooks, Washington, D. C., were on the brief, for appellee.

Before FICKLING, GALLAGHER and PAIR, Associate Judges.

PAIR, Associate Judge:

The Government has appealed from an order granting a pre-trial motion to suppress, as evidence, a pistol, seized from beneath the seat of appellee's automobile which was standing a short distance from the scene of his arrest for "disorderly conduct." D.C.Code 1967, § 22–1107. The transcript of the pre-trial hearing reflects an alarming degree of inconsistent testimony respecting police action under rather bizarre circumstances.

At about midnight on July 12, 1970, appellee, Harold Roscoe Jones, and his father, Roscoe Lincoln Jones, who manage and own a liquor store located in southeast Washington, D.C., were in the process of closing their place of business for the night.

Appellee, who had illegally parked his father's Cadillac automobile in front of the liquor store, was approached by Officers Allen N. Carrington and R. T. Simmons, members of the Metropolitan Police Department, and requested to move the automobile. Appellee told the police officers that he was waiting for his father who was bringing some packages from the store. The officers, however, again re-

quested that he move the automobile. During the discussion, the father came to the automobile, placed some packages in it and, upon the request of the police officers, gave them his registration card and his operator's permit.

According to the testimony of Officer Simmons, appellee, after first calling him a stupid s. o. b., left the scene and returned a short time later driving a red Volkswagen which he parked near a crosswalk, across from the place where he had left the two officers and his father. Officer Simmons testified further that appellee got out of his automobile, left the door open and the motor running, and again called him an s. o. b., after which he entered into a discussion with the other officer who was preparing a traffic violation notice for his father. The testimony of the two police officers was that both appellee and his father addressed them with very loud, profane and other particularly vile characterizations, with the result that a crowd was attracted. Appellee's testimony was that he and his father were merely inquiring as to why his father was receiving a traffic violation notice under such circumstances, and denied that he or his father addressed the police officers with any profane or vile language or that a crowd gathered at the scene.

The two police officers, becoming concerned, called for assistance, arrested appellee and his father for "disorderly conduct" and placed them in separate police cars for transportation to the precinct station.

Officer Fish, one of the six police officers who responded to the call for assistance, was assigned to "drive" appellee's automobile (Volkswagen) to the precinct station.

Officer Fish stated that, accompanied by Officer Carrington, he approached appellee's automobile, reached under the driver's seat in search of the seat adjustment lever and felt a "metal object." He then "removed the metal object," discovered it was a pistol, and handed it to Officer Carrington. Appellee was subsequently charged with carrying a pistol without a license in violation of D.C.Code 1967, § 22–3204.

At the hearing on the motion to suppress, appellee testified that the pistol was his, that it was registered, and that he had taken it from the liquor store prior to the arrival of the police and placed it beneath the seat of his automobile for the purpose of taking it home. Appellee testified further that when he put the pistol under the seat of his automobile it was unloaded, in a holster and wrapped in a brown paper bag. Officer Fish, who discovered the pistol, stated that he did not find a holster or a brown paper bag, and that the pistol was loaded.

The trial judge, noting the "many inconsistencies" in the police officer's testimony and the "forthright attitude" of the appellee, stated that he was unable to conclude beyond a "reasonable doubt" that the arrest for disorderly conduct was valid,[1] and expressing doubt that appellee could be charged with knowingly carrying a gun while in police custody, granted the motion to suppress the gun as evidence.

The Government on this appeal contends that the court "confused its functions" when it stated that it could not "conclude beyond a reasonable doubt that there was a valid arrest" and urges that the court should have applied the "reasonable probabilities" standard in determining the legality of the arrest for purposes of the motion to suppress. United States v. Cumberland, D.C.App., 262 A.2d 341, 343 (1970).

There is substance to this argument because, in determining the legality of appellee's arrest for disorderly conduct, the trial court certainly did not apply the standard mandated by *Cumberland*.

Here, however, unlike the situation in *Cumberland,* there is no clear showing that

---

1. The Government has entered a nolle prosequi as to the charge of disorderly conduct.

the seizure of the pistol from beneath the seat of appellee's automobile was incidental to his arrest for disorderly conduct. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

The Government contends nevertheless that the pistol was discovered and seized under circumstances which were entirely reasonable. From our view of the record, we are unable to determine with certainty whether the seizure of the pistol was or was not reasonable under the circumstances.

There was conflicting testimony respecting police action at the scene following appellee's arrest for disorderly conduct. The testimony of Officers Carrington and Simmons was that the pistol was seized after a search of the automobile by Officer Fish. There was other testimony that Officer Fish discovered the pistol as he was standing at the side of the automobile reaching beneath the front seat for the seat adjustment lever so that he might "safely drive the car to the precinct."

Whatever view may be taken of this testimony, the plain fact is that the record does not disclose findings and conclusions sufficiently adequate for appellate review. Specifically, in disposing of the motion to suppress, the court made no findings upon which this court can base a judgment (1) whether the pistol was or was not the product of a search and seizure incident to a lawful arrest (Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), Preston v. United States, 376 U.S. 364, 84 S.Ct. 881 (1964)); (2) whether, if so, the seizure of the pistol from beneath the seat of appellee's automobile was so far beyond the area "within his immediate control" as to be constitutionally impermissible (Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)); and (3) whether, if the pistol was not the product of a search and sei-

zure in a Fourth Amendment sense, the intrusion into appellee's automobile was reasonable and warranted under the circumstances.

The order granting the motion is reversed, and the case remanded for further proceedings consistent herewith.

It is so ordered.