**Rufus Gray MAYFIELD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 5380.**

District of Columbia Court of Appeals.

Argued March 17, 1971.

Decided April 15, 1971.

Rufus Gray Mayfield, pro se, and, at the request of the court Langdon G. Dowdey, Washington, D. C., for appellant.

Jerome Wiener, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before PAIR, REILLY and YEAGLEY, Associate Judges.

REILLY, Associate Judge:

Appellant's conviction of unlawful possession of narcotics [1] is based entirely on a police officer's discovery in appellant's car of an envelope containing a small quantity of marijuana. The only question presented by this appeal is whether the envelope and its contents should have been received as evidence in the face of a defense contention that these items were obtained by a search and seizure contravening fourth amendment standards.

1. D.C.Code 1967, § 33-402.

The record shows that on December 16, 1968, police were making routine checks of automobiles cruising in a downtown area where reports of window breaking had been received. Shortly after midnight, appellant, driving with two friends, was stopped by a police officer and asked to produce his license and registration. As a stamped notation on the permit revealed a suspension, the officer arrested him for operating a motor vehicle without a valid license.

While an argument about this was going on, two more officers—one of them a police sergeant—arrived on the scene in another police car. Appellant was then placed in a squad car and driven to a precinct station where he was booked on the same charge for which he was arrested, and detained for inability to post collateral. In the meantime, the sergeant, having ascertained from appellant's passengers that neither had a current permit, instructed a third officer to drive appellant's vehicle to the station—the two passengers accompanying him.

Upon arrival, the passengers stepped out of the car. Appellant then being inside the building, the arresting officers proceeded to impound the car, search it, and make an inventory of its contents. According to their testimony, one of the items discovered was a brown envelope which they had previously observed appellant slipping under the front seat when he went back to his car momentarily after being notified he was under arrest, but before he entered the police vehicle to go to the station. Upon being advised by a narcotics officer that the content of the envelope was marijuana, appellant was booked on an additional charge—the one on which he was ultimately convicted.

In a pretrial proceeding, the court denied a motion to suppress after hearing testimony of the arresting officer, the sergeant, and appellant.[2] The court's conclusions of law were that (1) the arrest was valid; (2)

the impoundment of the car was proper; (3) the search of the vehicle at the precinct was a normal search incident to the impoundment; and (4) the seizure was incident to a lawful arrest and proper impounding. The court's ruling was accepted as the law of the case in a subsequent jury trial before another judge, where the envelope was admitted. Appellant was found guilty of possession as charged by the information, given a six months suspended sentence, and placed on probation.

■ In reviewing the findings concerning the motion to suppress, we agree that the arrest was lawful. Irrespective of the reason the police officer stopped appellant's car, the absence of proper driving credentials did justify his arrest. It has also been held that under certain circumstances, a contemporaneous seizure of an article in the course of an arrest may satisfy the constitutional requirement of reasonableness, Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), particularly if the person being arrested tries to hide it, McGee v. United States, D.C.App., 270 A.2d 348 (1970), or if the article is in plain view of the officer, Hobby v. United States, D.C.App., 275 A.2d 235 (No. 5449, decided March 22, 1971).[3]

■ But after appellant was safely in custody inside a precinct station, to hold that the police without a warrant could search his car (taken to the station at their direction) and then use any incriminating item—which might turn up by accident—as evidence for an entirely different offense, raises quite another question. The Government contends that this search was justified under a regulation requiring police officers after impounding an automobile which has been stolen, abandoned or left unattended, to make an inventory of the contents of the car, remove any valuables for safekeeping, and put the car in a place where it is not likely to be van-

---

2. Appellant denied placing any object under the seat or any knowledge of the brown envelope.

3. *See also* United States v. Johnson, U.S. App.D.C., 442 F.2d 1239 (No. 23,900, decided March 22, 1971).

dalized or pilfered before being claimed by or returned to its lawful owner. This court has not questioned the propriety of this regulation, recognizing that its purpose is to protect the property of the car owner and to minimize the likelihood of law suits charging police custodians with negligence. Williams v. United States, D.C.Mun.App., 170 A.2d 233 (1961).

Obviously compliance with this regulation necessarily involves some search and seizure. This court, however, in situations where the search has occurred in a parking area contiguous to a police station while the accused is inside the building being booked on a traffic charge (which is the case here) has consistently held that resort to impoundment procedure does not make admissible—at least for the prosecution of wholly different offenses—articles thereby uncovered which would be otherwise inadmissible on fourth amendment principles. Williams v. United States, *supra,* (prosecution for carrying gun found in car which police previously had instructed owner to drive to station in order to post collateral on speeding charge); United States v. Pannell, D.C.App., 256 A.2d 925 (1969), (prosecution for possessing narcotics paraphernalia discovered in car driven to station by policeman after defendant's arrest for operating without a permit); Pigford v. United States, D.C.App., 273 A.2d 837 (1971), (prosecution for receiving stolen goods seized during purported inventory search, after arrest on outstanding traffic warrants—accused having driven car into police lot at officer's direction).

It is true that in these opinions the lawfulness of the impoundment was questioned, whereas, here, the motions judge found the impoundment proper. The common denominator of all these cases, however, is the fact that the car was in the hands of the police only because of the temporary absence of the driver from his vehicle while being booked—precisely the factual situation in the instant case. As these decisions are controlling law in this jurisdiction, the ruling that the incriminating item should not have been suppressed because the search was a normal incident of impoundment cannot stand.[4]

▉ It is vigorously urged by Government counsel, however, that even though denial of the motion to suppress may not be sustained by the impoundment regulations, the ruling was justified on the ground that the arresting officer, having seen appellant throw something under the seat of his car, was justified in seizing it as an incident to a lawful arrest, citing McGee v. United States, D.C.App., 270 A.2d 348 (1970), where we affirmed a conviction for carrying a pistol without a license. There, a police officer who had stopped a driver for speeding, saw him drop an unidentified object and, immediately reaching into the car, discovered the object was a pistol.

Counsel contends that there is no real difference between the instant case and *McGee,* even though here the officers deferred their search until the car was in the proximity of the precinct station. He asserts that such delay was reasonable and justified in order to avoid a traffic tie-up and curious bystanders. In short, the argument is that the distinction relied upon by appellant is inconsequential.

Artificial as this distinction may appear, the Supreme Court has deemed unity in time and place a crucial factor in challenged seizures. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply

4. As the Williams decision had been reported prior to the ruling on the motion to suppress, it is probable that the court below would not have fallen into error had counsel for the movant drawn attention to it. Unfortunately appellant, disregarding the advice of that court and its offer to provide counsel, insisted on appearing pro se. No memorandum of points and authorities was filed. In this court, appellant was asked to identify the anonymous author of his brief, and the latter was then requested to present supplementary comment on the legal issues.

not incident to the arrest." Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964); *accord,* Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). The Government argues, however, that this is not a hard and fast rule because in a more recent case, the highest court did uphold a warrantless search and seizure of a car removed from the scene of an arrest after its occupants had been taken into police custody. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

But the situation there was considerably different, for the arrest was prompted by a radio report notifying police that a filling station had just been robbed, and giving a description of the getaway car and the armed robbers. Such a car with occupants matching this description was halted only two miles from the scene of the holdup, the men inside the car were arrested, and a search of the car after being driven to a police station, disclosed, *inter alia,* revolvers and the money taken at gunpoint.

The opinion emphasized that just as there was probable cause to arrest the occupants of the car for the robbery of the filling station attendant, " * * * just as obviously was there probable cause to search the car for guns and stolen money." Chambers v. Maroney, *supra,* at 47–48, 90 S.Ct. at 1979. The court was at pains to distinguish the facts which gave the police probable cause to believe that a search of the car would produce the fruits of the crime for which the arrest had been made, from the situations it had considered earlier in *Preston* and *Dyke,* stating:[5]

In *Preston, supra,* the arrest was for vagrancy; it was apparent that the ' officers had no cause to believe that evidence of crime was concealed in the auto. In *Dyke, supra,* the Court expressly rejected the suggestion that there was probable cause to search the car, 391

U.S., at 221–222, 88 S.Ct. 1475–1476, * * *.

In light of this guiding principle, we find no circumstances in this case which would have given the police officers probable cause to believe that a search of the car would disclose the presence of narcotics. While the officers who made the search were the ones who testified as to having seen appellant slip an envelope under the seat, neither claimed this action suggested an attempt to conceal narcotics. Indeed, their expressed willingness to let one of the passengers drive the car away had either possessed the requisite permit, negates any such inference, for the officers would scarcely have risked the likelihood of the envelope's being destroyed or discarded by appellant's friends had they attached significance to it. Accordingly, under the doctrines enunciated in *Preston* and *Dyke,* the motion to suppress should have been granted.

Reversed.

5. Chambers v. Maroney, *supra,* at 47, 90 S.Ct. at 1979.