Willie **ARRINGTON**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 10683.

District of Columbia Court of Appeals.

Submitted Feb. 24, 1977.

Decided Jan. 13, 1978.

---

Warren E. Gorman, Chevy Chase, Md., appointed by the court, for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, William D. Pease, Neil A. Kaplan, John C. Martin, Gerard F. Treanor, Jr., and

Thomas G. Corcoran, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and GALLAGHER and MACK, Associate Judges.

NEWMAN, Chief Judge:

After a bench trial, appellant was convicted of multiple counts of burglary and larceny. On appeal he contends the motions judge committed reversible error in denying his motion to suppress certain tangible evidence. We agree and reverse.

Insofar as relevant to the suppression issue, the evidence was as follows. On the afternoon of February 12, 1976, in the 1200 block of Q Street, N.W., Officer Jones of the Metropolitan Police Department observed appellant in a 1970 Cadillac stopped abreast of a parked car. After directing appellant to move his vehicle around the corner onto Vermont Avenue, the officer conducted a WALES check,[1] from which he ascertained that appellant's driver's license had been suspended. Appellant was placed under arrest for driving on a suspended permit.

Officer Jones further testified that during the time he was conducting the WALES check (while seated in his police vehicle to the rear of appellant's vehicle) he noticed that appellant, who was then seated in his Cadillac, "bent over to the passenger's side and kept looking up in his mirror to see where I was positioned at. During the time it seemed as though, you know, he was pushing something under the seat and looked back towards me to see where I was or what I was doing." Officer Jones also stated that at the time he arrested appellant (according to his testimony, 3:50 p. m.),

he could see a brown bag partially protruding from under the passenger's seat, which, because of appellant's "furtive motions", he suspected contained contraband.[2] However, he made no attempt to examine the bag nor to ascertain its contents at the arrest scene. During his testimony at the suppression hearing, appellant placed the time of his arrest between 1:30 p. m. and 1:45 p. m. on the date in question. He denied making any "furtive motions" as described by Officer Jones, and further stated that because of the design of the interior of his car and the height of the seats therein, it would have been physically impossible for Officer Jones to have seen any "furtive movements" if any had occurred.

Appellant was transported in a police transport vehicle to the 3rd District police substation at 6th and New York Avenue, N.W., a distance of approximately 14 blocks. The Cadillac was driven to the same police station by Officer Jones. Upon arrival at the police station, Officer Jones removed the partially protruding bag from under the seat and examined its contents. Finding therein credit cards and other documents in the names of two females, Officer Jones searched the glove compartment of the car and found other items.[3]

No evidence was presented by either side on the issue of whether appellant was asked to consent to the removal of his vehicle to the police station. Appellant's attempts, through counsel's cross-examination of Officer Jones, to obtain official police records to resolve the conflicting testimony as to the time of appellant's arrest as well as the reason for the removal of appellant's car from Vermont Avenue to the police precinct were frustrated by the motions

---

1. WALES is a computerized system containing information pertinent to law enforcement.

2. On direct examination by government counsel and again on examination by the court prior to cross-examination, Jones testified he first observed the brown bag after arriving at the police substation. It was only upon cross-examination that the officer recalled having seen

a brown bag at the time of arrest. *Compare* Transcript of Suppression pp. 27 and 30, *with* pp. 33–34.

3. A subsequent search of the trunk of the car by another police officer was held to be constitutionally invalid by the motions judge and is not before us on this appeal.

judge's termination of this relevant line of inquiry.[4]

Finding that the search was "reasonable" under the circumstances, the trial court denied the motion to suppress the contents of the brown bag and the glove compartment.

On this appeal, the government seeks to sustain the denial of suppression on four grounds: (1) a police officer, having probable cause to search an automobile on the scene where it is stopped, may constitutionally do so later at the station house without first obtaining a warrant, *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); (2) the bag was examined during a proper inventory of the automobile in police custody, *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); (3) the search was incident to a lawful arrest, *McGee v. United States*, D.C. App., 270 A.2d 348 (1970); and (4) the search was "reasonable." We deal with each of these grounds in turn.

### I. *Probable Cause*

Where *probable cause* exists to search an automobile when it is stopped on a highway, police may remove the vehicle to a more secure location, such as a police station, before conducting such a search and they need not first obtain a search warrant. *Chambers v. Maroney, supra.* As *Chambers* makes clear, the *sine qua non* of this exception to the warrant requirement of the Fourth Amendment is *probable cause* to search, coupled with vehicular mobility. Thus, we must determine whether probable

4. Portions of the transcript of the suppression hearing before the motions judge showing counsel's attempts to inquire on these issues, are set forth as follows:

Q. Now, at that particular location, had you made any inquiry as to whether parking is permitting there or not?

A. Parking is not permitted abreast of another car in the District of Columbia. It is a violation.

Q. I understand that, officer, but in that vicinity, is parking permitted?

[AUSA] Objection, Your Honor. That's not his question—

THE COURT: It doesn't make any difference. What difference does it make whether parking is permitted there or not. The officer testified he was double parked. And if he was double parked, the officer has a right at that point to proceed further; although he doesn't have to have anything. He can make a traffic check in the District of Columbia at any time.

[COUNSEL]: Yes, Your Honor.

THE COURT: What difference would it make whether parking was permitted there or not?

[COUNSEL]: Well, he could have left the car there, rather than drive it down to the station.

THE COURT: And he would be responsible for any damages that occurred.

[COUNSEL]: I don't believe that's the law, Your Honor.

THE COURT: Well, that's what I would find anyone sues. You can't leave a car on the streets of this city, especially in that area, 1300 block of Vermont Avenue, a very high crime area—

[COUNSEL]: Your Honor, I believe—

THE COURT: You can proceed.

[COUNSEL]: Yes, sir.

[COUNSEL]:

Q. My question, is did you check for parking places where the car wound up so that you could park the car on that area of the street?

A. No.

Q. Have you checked since that time to see whether parking is allowed in that area of the street?

[AUSA]: Your Honor, I would object. This question has been asked—

THE COURT: Objection sustained. Proceed.

[COUNSEL]:

Q. What time was it when you asked Mr. Arrington to pull over?

A. It was approximately 1550. It was approximately a quarter—about a quarter to four.

Q. Do you have any records that show this time?

[AUSA]: Objection, Your Honor.

THE COURT: Objection sustained. It is a collateral matter and you are bound by it.

.     .     .     .     .

THE COURT: The Court notes that there was a working day and the Court is well aware, having recently sat in Traffic Court before Judge Korman that that is a rush hour zone, no parking permitted in the 1300 block of Vermont Avenue during rush hour at any time. Now, whether it is at any other time, I don't know.

[COUNSEL]: Your honor, would the Court take judicial notice that rush hour starts at four o'clock?

THE COURT: Alright; although I don't know why you are raising it. You may proceed.

cause existed for the search of the automobile at the scene. We conclude that no such probable cause to search existed at the scene.[5] Taking the evidence with reasonable inferences therefrom, the facts known to the officer at the time of the arrest showed no more that one who was found operating a motor vehicle while his license was suspended made "furtive movements" and that a brown paper bag partially protruded from beneath the seat. This is insufficient to establish probable cause to search. *Tyler v. United States,* D.C.App., 302 A.2d 748 (1972); *Watts v. United States,* D.C.App., 297 A.2d 790 (1972). Thus the *Chambers* exception to the warrant requirement is not applicable.

## II. *Inventory Search*

The motions judge viewed the impoundment of appellant's vehicle upon his arrest as proper based on his view that such was a necessary precaution to safeguard appellant's vehicle.

■ Relying on *South Dakota v. Opperman, supra,* the government seeks to sustain the seizure and examination of the brown bag and its contents as part of a routine inventory incident to the impoundment of appellant's car. However, as *Opperman* makes clear, a condition precedent to a constitutionally permissible inventory search is lawful possession by the authorities of the vehicle. We too have repeatedly so held. *See, e. g., Mayfield v. United States,* D.C.App., 276 A.2d 123 (1971); *United States v. Pannell,* D.C.App., 256 A.2d 925 (1969); *Williams v. United States,* D.C.App., 170 A.3d 233 (1961).[6] Therefore, we

must determine whether the police properly had appellant's vehicle in their custody.

■ Metropolitan Police Department General Order, Series 602, No. 1, (effective May 26, 1972), entitled "Automobile Searches and Inventories", sets forth the police procedure to be followed in cases such as here presented. Part I-B of this Order outlines four situations in which property may be impounded and inventory searches conducted. Only one of these is arguably applicable on the facts of this case—inventory of prisoner property, *i. e.,* property which is not itself evidence of a crime or subject to forfeiture and which is in the possession of an arrestee at the time of arrest. As our decisions in *Williams, supra,* and *Pannell, supra,* make clear, police are authorized to impound a motor vehicle as prisoner property only where the prisoner consents thereto or is incapable of making other arrangements for its disposition. Here, there is no evidence that appellant consented to the impoundment and he was fully available to provide otherwise for its disposition. We thus conclude that the impoundment was improper. Perforce, so was the subsequent inventory. *Opperman, supra; Mayfield, supra;* and *Williams, supra.*[7]

## III. *Search Incident to Arrest*

■ The government next argues that the search was valid as incident to a lawful arrest, placing its principal reliance on *McGee v. United States, supra.* This reliance is misplaced. In *McGee,* a search incident to a lawful arrest was made *at the scene of the arrest* and *at the time of the*

5. In our determination of this issue, we are hampered by the failure of the motions judge to make explicit findings of fact and conclusions of law as is mandated by decisions of this court. *See U. S. v. Jones,* D.C.App., 275 A.2d 541 (1971); *Punch v. United States,* D.C.App., 377 A.2d 1353 (1977). For example, the motions judge did not resolve the testimonial conflicts as to the time of arrest (3:50 p. m. versus several hours earlier); the place of first sighting of the brown bag (scene of arrest versus station house), or several other questions. We repeat our prior admonitions. Continued failure to comply may require this court to invoke

its supervisory jurisdiction to compel compliance in this regard. *See In re: D.M.R.,* D.C. App., 373 A.2d 235 (1977).

6. The motions judge's impatience with defense counsel (*see* n.4 *supra*) deprived counsel of an opportunity to bring to the court's attention this series of our decisions.

7. Section 91 of the D.C. Traffic and Motor Vehicle Regulations on impounding is likewise inapplicable as it applies only where a vehicle is illegally parked *and* unattended. *See Williams, supra.*

*arrest;* i. e., there was unity of both time and place. Here, the search was neither at the scene of the arrest nor at the time thereof. The rationale of the "search incident to arrest" exception to the warrant requirement set forth in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), lies in the need to permit a search of the person of an arrestee and of the area "within his immediate control" in order to: (1) protect the safety of the arresting officers, and (2) to prevent the destruction by the arrestee of evidence. *Chimel* defined "within his immediate control" as being "the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763, 89 S.Ct. at 2040.

In light of the rationale for the "search incident to arrest" exception to the warrant requirement, it is not surprising that on facts similar to those here presented, we rejected the vigorous attempt of the government to sustain a search of a vehicle at a station house while the defendant was in custody inside the station house as one incident to an arrest. *Mayfield v. United States, supra.* There, as here, we recognized that *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), and *Dyke v. Taylor Implement Mfg. Co.,* 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), compelled us to reject the government's contentions. As the Supreme Court said in *Preston* : "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." 376 U.S. at 367, 84 S.Ct. at 883. We hold that the search in this case, having taken place approximately 14 blocks from the scene of the arrest and some considerable time after the arrest, was not "incident to an arrest."

IV. *Was the Intrusion "Reasonable" and thus Valid*

The government contends that the "intrusion" involved in this case was "minimal," and thus should be sustained since it was "reasonable even in the absence of probable cause." It appears that the government thereby contends that where this court determines, apparently on an ad hoc basis, that a search is "reasonable," we should sustain its constitutional validity. While it is true that the Fourth Amendment only interdicts "unreasonable searches and seizures", it has been clear since at least *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.* at 357, 88 S.Ct. at 514 (footnotes omitted). And in *Chimel,* the Court said: "Such searches, in the absence of well-recognized exceptions, may be made only under authority of a search warrant. The 'adherence to judicial process' mandated by the Fourth Amendment requires no less." 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) (footnote omitted).[8] Having concluded that none of these "specifically established and well-delineated exceptions" is applicable in this case, as we are commanded by *Katz, supra,* and *Chimel, supra,* to do, we reject the government's invitation to venture forth on the uncharted sea of ad hoc adjudications of constitutional reasonableness.

*Reversed.*

GALLAGHER, Associate Judge, dissenting:

As we know in Fourth Amendment cases minor circumstances often alter results. It is agreed that the officer could have placed his hand under the car seat to search when he first entered the car to drive it to the precinct. It does not strike me as unreasonable that, instead, he placed his hand under the seat in the same car 14 blocks and, from all that appears, a few minutes later when he arrived in front of the precinct. As an earthy proposition, I view the search here as being reasonably contemporaneous.

8. The government does not cite to us any Supreme Court decision casting doubt on the continued validity of these teachings of *Katz* and *Chimel.*