**Elliott E. MADISON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–1690.

District of Columbia Court of Appeals.
Argued Feb. 26, 1986.
Decided July 3, 1986.

---

**280**

J. Thomas Giunta, Washington, D.C. for appellant.

Judith E. Retchin, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., and Robert M. Morgan, Asst. U.S. Attys., Washington, D.C. were on brief, for appellee.

Before BELSON and ROGERS, Associate Judges, and PAIR, Senior Judge.

PER CURIAM:

Appellant appeals his conviction of possession of cocaine, D.C.Code § 33–541(d) (1985 Supp) on the ground that cocaine was found as the result of an impermissible inventory search of the car he was driving by the U.S. Capitol Police, and therefore should have been suppressed as an unconstitutional seizure. He also contends his oral statement about the drugs following the search should have been suppressed. We affirm.

**I**

At approximately 12:52 a.m. a United States Capitol Policeman noticed that appellant was driving a car without its headlights and had driven through several red lights, one at First and E Streets, the second light on New Jersey Avenue, and the third at South Capitol and Canal Streets. The officer stopped appellant in the 600 block of South Capitol Street, S.W. at Virginia Avenue, and when he was unable to produce a license and registration, determined, following a computer check, that the license tags on the car had expired and did not match the registration in appellant's name. Appellant explained that he had taken the car from his place of employment, an auto repair shop, and put his license tags on the car, but did not know who owned the car. Following a breathalizer test, which he failed, appellant was charged with driving while intoxicated and other traffic offenses. He and the car were transported to the police station.

When the Capitol Police were unable to determine ownership of the car, they decided to impound it. An inventory search of

the car followed and revealed under the front passenger seat a large amount of cash, a plastic bag of white powder and another bag containing a weed-like substance; the white powder was subsequently determined to be cocaine and the weed-like substance was determined to be marijuana. The officer who performed the inventory search checked the entire interior of the vehicle. Although the U.S. Capitol Police do not have written guidelines for such searches, the officer testified that he had been trained by his supervisors to perform inventory searches in this manner and he did so in accordance with standard operating procedures.

## II

■ An inventory search of an automobile is permissible only if the authorities lawfully possess the vehicle. Lawful possession exists where there is statutory or regulatory authority for impoundment of a vehicle, the police have probable cause to believe that the car contains contraband, or a person consents to such possession or is unable to make other arrangements for disposition of the automobile. *Arrington v. United States*, 382 A.2d 14, 18 (D.C. 1978) (inventory search and impoundment improper where no evidence that appellant consented to impoundment and was fully available to provide otherwise for disposition of his automobile); *United States v. Pannell*, 256 A.2d 925, 926–27 (D.C.1969) (inventory search and impoundment improper where automobile could have been removed from police lot within sufficient time to prevent risk of damage to car or interference with police operations); *Williams v. United States*, 170 A.2d 233, 234 (D.C.1961) (inventory search improper where no statutory basis for impoundment of vehicle parked in front of police station). *See also South Dakota v. Opperman*, 428

U.S. 364, 375, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 3080, 73 L.Ed.2d 750 (1982). The Capitol Police are authorized to impound a vehicle on U.S. Capitol Grounds which is not properly registered. D.C.Code § 40–105 (1981) (unlawful for any person to operate a motor vehicle in the District that is not properly registered or that does not display proper license tags); D.C.Code § 9–127 (1981) (Capitol Police have exclusive charge and control of regulation and movement of all vehicular and other traffic, including the parking and impoundment of vehicles within the Capitol Grounds).

■ Appellant was arrested on Capitol Grounds.[1] Officer McCumber testified that it was the policy of the Capitol Police to impound a vehicle for safekeeping if ownership of the vehicle is unknown. Since the police could not determine following appellant's arrest for traffic violations whether he was an authorized user of the car or who owned the car, the police legitimately exercised their "community caretaking functions" when they impounded the car. *Opperman, supra*, 428 U.S. at 368, 96 S.Ct. at 3096. The police could not return the car to appellant without risking dereliction of duty since he could not produce a registration for the car and denied ownership.[2] Therefore, since the police are authorized to conduct an inventory search of a car which is lawfully impounded, *id.; Schwasta v. United States*, 392 A.2d 1071 (D.C.1978); *Arrington, supra*, 382 A.2d 14, the only issue is whether the scope of the inventory search was reasonable.

■ An inventory search taken to protect a car lawfully within police custody is presumptively reasonable if conducted pursuant to standard operating procedures.

---

1. *See* Metropolitan Police Department General Order No. 310.1 D.1. and Attachment A to Metropolitan Police Department General Order No. 310.1 (Map showing Properties Under the Jurisdiction of the Architect of the Capitol).

2. The government has not challenged appellant's standing to contest the impoundment and search. *See Hill v. United States*, 512 A.2d 269, 271 (D.C.1986), citing *United States v. Johnson*, 496 A.2d 592, 595 (D.C.1985).

*Opperman, supra*, 428 U.S. at 372, 96 S.Ct. at 3098. Even if not conducted pursuant to standard operating procedures or written guidelines, the search may nonetheless be constitutionally reasonable if it was reasonable under the Fourth Amendment. *Id.* at 364, 96 S.Ct. at 3092; *Cooper v. California*, 386 U.S. 58, 61, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967). The constitutionally permissible scope of an inventory search must be determined by reference to the reasons inventory searches are permitted. In *Opperman* the Supreme Court identified three legitimate purposes: (1) for the protection of the owner's property; (2) for the protection of the police against false claims; and (3) for the protection of the police from potential danger. *Id.*, 428 U.S. at 369, 96 S.Ct. at 3097. In the instant case the trial court found that the sole purpose of the search was to retrieve items of value. The record supports this finding. Checking beneath the seat of a lawfully impounded vehicle is reasonable action by the police, and none of the cases on which appellant relies [3] are to the contrary.

### III

Appellant also contends that his oral statement to police after the inventory search should have been suppressed. He contends the *Miranda* [4] warnings which were given to him did not break the causal connection between the Fourth Amendment violation and his statement. He relies on *Brown v. Illinois*, 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975) and *United States v. Gayden*, 492 A.2d 868, 875 (D.C.1985). Alternatively, appellant argues, even if the search was legal, he did not knowingly, voluntarily, and willingly waive his *Miranda* rights prior to making the statement because he was severely inebriated. He relies on the testimony of the arresting officer that he "kept falling

asleep ... and seemed either inebriated or perhaps under the influence of drugs" and *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The trial court found that appellant had been advised of his *Miranda* rights and knowingly and voluntarily waived them before speaking to the police.

Since the inventory search was lawful, appellant's contention that there was no break in the chain of causality between the search and his statement must fail. In addition, the trial court heard undisputed testimony that appellant was initially advised of his rights and stated he understood them and was readvised at the stationhouse where he executed a written waiver. The arresting officer testified appellant appeared to understand his rights, although he might have been intoxicated when arrested. At least one hour later at the station, appellant indicated he had previously been advised of his rights.

▮▮▮▮ Upon review of whether appellant voluntarily waived his *Miranda* rights, we must determine whether the trial court's findings of fact have substantial support in the record and whether the trial court erred as a matter of law. *Cf. Miller v. Fenton*, —— U.S. ——, 106 S.Ct. 445, 451, 88 L.Ed.2d 405, 54 U.S.L.W. 4022, 4024 (1985) (U.S. Dec. 3, 1985) slip op. at 6; *In re C.L.W.*, 467 A.2d 706, 709 (D.C.1983); *Wilkerson v. United States*, 432 A.2d 730, 734 (D.C.1981); *In re M.D.J.*, 346 A.2d 733, 735 (D.C.1975). The voluntariness of the *Miranda* waiver is to be determined by reference to the totality of the circumstances with consideration given to appellant's previous experience with the legal system as well as his sophistication in matters of a criminal nature. *In re W.B.W.*, 397 A.2d 143, 145 (D.C.1979). Appellant is a 38-year-old male with two years of college and at least two prior criminal convictions. Short-

3. *Smith v. State*, 48 Md.App. 425, 427 A.2d 1064 (1981); *State v. Miller*, 420 A.2d 181, 182 (Del. Super.Ct.1980); *State v. McDougal*, 68 Wis.2d 399, 228 N.W.2d 671 (1975); *State v. Jewell*, 338 So.2d 633 (La.1976); *Virgil v. Superior Court*, 268 Cal.App.2d 127, 73 Cal.Rptr. 793, 796 (1968);

*Kelly v. State*, 607 P.2d 706, 708 (Okla.Cr.App. 1980).

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ly before the car was searched, appellant was coherent enough to make alternative arrangements to have the car towed and returned to his place of employment. He was also coherent enough to tell a police officer that he had already been advised of his *Miranda* rights. Accordingly, the evidence that he kept falling asleep, appeared inebriated around 4 a.m., and appeared intoxicated at the time of his arrest three hours earlier does not demonstrate that the trial court's finding appellant voluntarily waived his rights upon arriving at the station is clearly erroneous or that his will was overborne by his intoxication. *See United States v. Bernett*, 161 U.S.App.D.C. 363, 495 F.2d 943 (1974); *Bell v. United States*, 60 App.D.C. 76, 47 F.2d 438 (1931).

■ But even if the trial court erred in denying appellant's motion to suppress, the error was harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). After the contraband was found, appellant was asked about the money and the suspected narcotics and stated he knew about the items, but denied they were his. Thus, appellant's oral statement was exculpatory, and its probative value, if any, is *de minimis*. There was ample evidence to support appellant's conviction without the statement about the drugs: at the arrest scene appellant made inconsistent statements about the car, indicating a consciousness of guilt; he also had ready access to the drugs, and by his own testimony, no one else kept property in the car.

Accordingly, the judgment is affirmed.

*Affirmed.*