**James Ambrose BROWN, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 5585.**

District of Columbia Court of Appeals.

Argued June 28, 1971.

Decided Oct. 26, 1971.

---

8. D.C.Code 1967, § 1–1510(3) (E) (Supp. IV, 1971).

Thomas W. Farquhar, Washington, D. C., appointed by this court, for appellant.

Ed Wilhite, Washington, D. C. was on the brief for appellant.

James A. Adams, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., and John A. Terry and Raymond Banoun, Asst. U. S. Attys., were on the brief, for appellee.

Before PAIR, REILLY and YEAGLEY, Associate Judges.

PAIR, Associate Judge:

After trial without a jury on an information charging second degree burglary [1] and petit larceny,[2] appellant was found guilty. Urging reversal, he contends that the judgments of conviction were based principally upon his inculpatory statements received into evidence without regard to the teaching and mandate of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966).

The facts as disclosed by the testimony are substantially as follows.

On October 13, 1970, Officers Bradley and Wade of the Metropolitan Police Department were informed that four men had been observed carrying a stereo (also referred to as a "hi-fi"), and then concealing it in a wooded area near Polk and Olive Streets, N. E. Upon investigation at the area, the officers observed two youths "acting suspiciously." One of the youths, Donald James Stokes, was recognized by the officers as a known housebreaker. The other youth was later identified as William Raye Warren.

The officers interrogated the youths about the stereo and were informed that it had been stolen by appellant from an apartment at 1624 Eastern Avenue, N. E. At the request of the officers, the youths accompanied them as they cruised about the area and when appellant was seen he was identified, placed under arrest and charged as set forth in the information.

1. D.C.Code 1967, § 22–1801(b) (Supp. IV, 1971).

2. D.C.Code 1967, § 22–2202.

At the trial, Officer Bradley testified that when appellant was placed under arrest he was given the proper warnings. The following transpired:

THE COURT: Ask the officer what he asked him? Do you have the statement you say you gave to counsel?

MR. BANOUN: Yes. PD 163 which I gave to counsel.

MR. FARQUHAR: It is a statement more in the nature of an admission. We would ask for a hearing on that.

MR. BANOUN: A statement or admission, it is the same thing. It is a Miranda issue. If there were a jury we would have a hearing outside of the presence of the jury.

THE COURT: Proceed with your question about the warning.

Officer Bradley was asked what warnings were given and he replied that he read the warnings from a card—PD 47.[3]

The officer was then asked:

THE COURT: After you read to him the statement did you ask him whether he understood those rights?

MR. FARQUHAR: Objection, Your Honor, he has read it. Furthermore I did request a Miranda hearing before the trial. I want the record to reflect that.

MR. BANOUN: What difference does it make? This is a non-jury trial. If we had a Miranda hearing before the trial the Government could appeal the decision.

\*    \*    \*    \*    \*    \*

THE COURT: The court does recall your request for a hearing with respect to Miranda statements. To save time proceed with the testimony.

The officer testified further, and over objection, that after the warnings were read, appellant was asked whether he understood his rights, that he replied in the affirmative and, at the precinct station, admitted that he commiitted the burglary at 1624 Eastern Avenue, N. E., while in the company of the two youths who informed to the police.

At the conclusion of the Government's case, appellant moved for a judgment of acquittal which was denied. Then followed testimony by appellant, during which he admitted that warnings had been read to him by the police from a card.[4] Appel-

3. You are under arrest. Before we ask you any question, you must understand what your rights are. You have a right to remain silent. You are not required to say anything to us at any time or to answer any questions. Anything you say can be used against you in court. You have the right to talk to a lawyer for his advice before we question you and to have him with you during the questions. If you cannot afford a lawyer and want one, a lawyer will be provided for you. If you want to answer questions now without your lawyer present, you will still have the right to stop answering questions at any time. You also have the right to stop answering questions at any time until you talk to a lawyer.

4. [By MR. FARQUHAR]
Q  What did he ask you?
A  He asked me did I know anything about this housebreaking.
Q  What else did he ask you?
A  He asked me did I break in this house, questions like that.

Q  Then what happened?
A  I told him I haven't heard anything of my rights.
Q  Pardon me?
A  I told Officer like I didn't hear any of my rights.
Q  What happened then?
A  Then he read me my rights.
Q  How did he read them to you?
A  Off a card.
Q  Is that the blue card, the police form 47?
A  I didn't really notice the color.
Q  What rights did he advise you of?
A  He was actually talking so fast until I didn't really understand.
Q  Did he advise you you had a right to an attorney?
A  I don't recall.
Q  Did he tell you if you didn't have the money the court would appoint an attorney for you?
A  No he didn't.

lant then denied that he made any statement to the police and denied also that he had broken into the apartment and stolen the stereo.

At the close of all the evidence, appellant was found guilty as charged.

The threshold question is whether, under the circumstances of this case, appellant should have been given a hearing as to (1) whether he had been adequately warned of his rights as required by *Miranda* [5] and (2) whether, prior to making any such admission, he made an affirmative and intelligent waiver [6] of his constitutional privilege against self-incrimination.

In United States v. Frazier, U.S.App.D. C. (No. 23,528, decided February 24, 1971), the court quoted from its prior decision in Frazier v. United States, 136 U.S.App.D.C. 180, 419 F.2d 1161 (1969), where it was said with respect to the *Miranda* doctrine at 1166:

[An] accused is entitled to the assistance of counsel before he is questioned and, in effect, that any confession he makes while in exclusive police custody prior to arraignment, is presumptively inadmissible under the Fifth and Sixth Amendments. Such confessions can stand if, but only if, the accused affirmatively and understandingly waives his rights, and the Government bears "a heavy burden" in attempting to show such a waiver.

In the case now under consideration, the trial judge, as the trier of the facts, heard the Government's evidence respecting both

the warnings and the inculpatory statements.[7] Although appellant questioned the admissibility of the inculpatory statements insisting that he was entitled to a hearing the trial judge, without first affording him an opportunity to state his version of the facts and circumstances surrounding the arrest, received the statement into evidence. Moreover, the trial court made no ruling on its admissibility under the *Miranda* criteria.

■ Any timely challenge to the admission of an inculpatory statement on *Miranda* grounds requires an evidentiary hearing and ruling.

[U]nless and *until* such warnings and waiver are demonstrated by the prosecution * * * no evidence obtained as a result of interrogation can be used against him. [Emphasis added, footnote omitted.] [8]

While there is some question as to whether the admissibility of the inculpatory statements was adequately challenged below, the record discloses that the trial court at one point acknowledged that an earlier request for a *Miranda* hearing had been made.

■ Any uncertainty must, of course, be resolved in favor of the appellant. As the court said in Frazier v. United States, *supra*, where an *attempt* was made to raise the issue, "[w]e do not demand more of [appellant] as a condition to litigation of issues fundamental in the criminal process." [9] [136 U.S.App.D.C. at 188, 419 F.2d at 1169.]

5. Miranda v. Arizona, 384 U.S. at 467–473, 86 S.Ct. 1602.

6. *Id.* at 475, 86 S.Ct. 1602; *see also* Dupont v. United States, D.C.App., 259 A.2d 355 (1969) and Walker v. United States, D.C.App., 250 A.2d 553 (1969).

7. Compare this situation with that in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), where a New York State practice for determining voluntariness of statements, which produced approximately the same result in a jury trial

situation, was held proscribed by the Due Process Clause of the fourteenth amendment. *See also* Hutcherson v. United States, 122 U.S.App.D.C. 51, 351 F.2d 748 (1965).

8. Miranda v. Arizona, 384 U.S. at 479, 86 S.Ct. at 1630.

9. *Compare with* Proctor v. United States, 131 U.S.App.D.C. 241, 404 F.2d 819 (1968) where the issue was not raised at trial, but the court noticed it as a "defect affecting substantial rights." *But com-*

On this record, we are therefore unable to make a judgment as to the admissibility of the inculpatory statement or as to its effect on the final disposition of the case. Because of the substantial unresolved issue of admissibility, we make the disposition ordered by the court in Coleman v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621 (1966), where, in a case also tried without a jury, a similar defect in the record was held to require a new trial.[10]

Reversed and remanded for a new trial.

---

pare United States v. Monroe, 141 U.S. App.D.C. 251, 437 F.2d 684 (1970), where it was noted that a trial judge was not required to hold a hearing, sua sponte, on the issue of voluntariness.

10. Notwithstanding Coleman v. United States, *supra*, our holding in this case is not to be understood as requiring a new trial in every case tried to the court sitting without a jury which may be remanded for an evidentiary hearing on a *Miranda* issue.