**Ronald A. BOTTS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6643.**

District of Columbia Court of Appeals.

Argued Feb. 5, 1973.

Decided Oct. 2, 1973.

6. Smith v. United States, D.C.App., 295 A.2d 64, 68 (1972).

John Z. Noyes, Washington, D. C., appointed by this court, for appellant.

Peter C. Schaumber, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Peter K. Mair and Edward D. Ross, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, GALLAGHER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

In this case appellant appeals from his conviction of receiving stolen property.[1] He assigns as error (1) the denial of his motion to suppress evidence and (2) the use of incriminating statements made by him after being given "Miranda" warnings which he asserts were inadequate. We affirm the denial of his motion to suppress and reverse his conviction based on the admission into evidence of incriminating statements made without the benefits of the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

At approximately 2 p. m. on December 16, 1971, a red Volkswagen driven by appellant failed to observe a stop sign at an intersection near 5th and F Streets, N.W. Officers Richard Dadurka and Dwight Mitchell of the Metropolitan Police Department, having observed this occurrence, pursued the vehicle and stopped it at or near 5th and H Streets, N.W. There is nothing in the record to indicate that appellant failed to respond to the attempts of the officers to flag him down or that his actions were, in any other way, suspicious.

After the vehicle stopped, Officer Dadurka alighted and observed appellant and a passenger within. (The passenger was not charged with any crime.) Officer Dadurka asked appellant for his driver's license and vehicle registration but appellant was unable to produce either. The officer noticed that the vehicle's inspection sticker had expired.

Officer Dadurka then informed appellant that he was "under arrest for the stop sign and, not having the permit or registration to identify himself or identify ownership

1. D.C.Code 1967, § 22–2205.

of the vehicle, that he also was being taken into custody and removed to [the] substation . . . ." Officer Mitchell then searched appellant, apparently finding nothing suspicious. Before leaving the scene of the arrest Officer Dadurka attempted to ascertain whether the vehicle was stolen, but was unable to do so because the central police computer which lists stolen cars was inoperative.

Appellant rode to the police substation in the patrol wagon driven by Officer Dadurka while Officer Mitchell drove the red Volkswagen. (Appellant's passenger had been released by the police and had departed from the scene.) The vehicle was parked outside the substation. Within five minutes after arriving at the substation, appellant in answer to a question by Officer Mitchell with respect to his driver's license and registration said, "If it isn't in here, [his wallet] it must be out in the car." On hearing this Officer Mitchell went out to the red Volkswagen and searched its interior, checking the sunvisor on the driver's side and under the driver's seat and the pouch on the driver's door. In the aforementioned pouch he discovered two driver's licenses which he brought back to the substation and handed to Officer Dadurka. Officer Dadurka asked appellant who the licenses belonged to and was told that they belonged to appellant's girl friend. These licenses turned out to have been stolen and were used as evidence in appellant's trial on a charge of receiving stolen property. Appellant was not charged with unauthorized use of a motor vehicle as the car belonged to his father.

In dealing with a warrantless search we necessarily start with the admonition of the United States Supreme Court in Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967), that

> searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject

only to a few specifically established and well-delineated exceptions. [Footnotes omitted.]

One of these exceptions is a search incident to an arrest. A police officer having validly arrested a suspect may search his person and the area under his immediate control for evidence or instrumentalities of the crime for which he has been arrested. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

When a suspect is arrested in a motor vehicle for a crime of which there may be evidence or instrumentalities, the vehicle may be searched incident to the arrest. Patterson v. United States, D.C.App., 301 A.2d 67 (1973); United States v. Jackson, 429 F.2d 1368 (7th Cir. 1970).

Appellant was initially stopped for failing to heed a stop sign. A search of his vehicle on this basis alone without attendant suspicious circumstances, would be invalid. *See* United States v. Page, D.C. App., 298 A.2d 233 (1972). When appellant was stopped, however, he was unable to produce his driver's license or a vehicle registration. D.C.Code 1967, § 40–301(c) requires a driver to have his operator's permit in his immediate possession. Part III Section 32(c) of the Traffic and Motor Vehicle Regulations for the District of Columbia (now 32 DCRR 3.316) requires that a driver have a registration card for the vehicle being driven in his possession or in the vehicle.

■ Our inquiry then is into whether the police officers in this case had probable cause to arrest appellant for unauthorized use of a motor vehicle, D.C.Code 1967, § 22–2204. If a search of the vehicle incident to the arrest would have been valid then the search performed shortly thereafter at the station house was valid. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Supreme Court held that the postponement of an otherwise valid search of a car incident to an arrest until a later time would not invalidate the search.

While we do not decide whether the absence of a vehicle registration by itself constitutes probable cause to believe that the driver is operating the vehicle without authorization, we conclude that the absence of *both* a registration and a driver's permit, in a situation where the police are unable to verify ownership by other means such as a computer check, gives probable cause to believe that the vehicle is being used without authorization in violation of D.C.Code 1967, § 22–2204.

This same conclusion has been arrived at by other courts which have had similar fact situations before them. In Kendrick v. Nelson, 448 F.2d 25 (9th Cir. 1971), appellant was stopped for failing to have adequate license plate illumination. He was able to produce neither an operator's permit nor a registration certificate. (Additionally, an open container of beer in the car constituted a vehicular violation.) The court upheld a search of the car's glove compartment for evidence of ownership of the vehicle.

In United States v. Owens, 346 F.2d 329 (7th Cir.), cert. denied, 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119 (1965), appellant was arrested for speeding. The vehicle was registered in the name of a person other than the driver and the driver could not show permission to drive from that person. The court found that the police officer, on the basis of the above facts, had reasonable grounds to believe that the car might be stolen and upheld a search of the trunk to determine whether the car was stolen.

In Taylor v. State, 421 S.W.2d 403 (Tex.Crim.App.), cert. denied, 393 U.S. 916, 89 S.Ct. 241, 21 L.Ed.2d 201 (1968), appellant was stopped for passing in a "no passing" zone. He could not produce an operator's permit or a vehicle registration. The court upheld the search concluding that the police officer had reasonable grounds to believe the car was stolen and the search incident to appellant's arrest was therefore valid.

Appellant contends that the circumstances in Dickerson v. United States, D. C.App., 296 A.2d 708 (1972), were more indicative of car theft than they are in the present case and points out that this court held the search in *Dickerson* unjustified. We view the facts in that case as being somewhat different than those present here. In *Dickerson* appellant was stopped because the vehicle he was driving had tags which appeared old and faded, and looked as if they might have been altered. His operator's permit was in order but the date on his registration card looked altered. When the tags on the vehicle were examined, they were found to be altered. Appellant was arrested and a police officer entered appellant's car to drive it to the police station. The police officer searched under the driver's seat and found a weapon which was the basis of appellant's conviction for carrying a pistol without a license. In finding the search unjustified, the court quite appropriately said at 709:

> Here the search was not for fruits of the offense because there were none. It was not for evidence of the offense because the officers already had the altered tags and registration. . . .

In the present case the offense of which appellant was suspected was unauthorized use of a motor vehicle, and the evidence of the offense being searched for (the registration card) was not in the possession of the police. It is a bit incongruous that appellant should argue that it was not reasonable for the police officer to search the vehicle for the registration card in view of the fact that appellant himself stated at the time that it (the registration card) "must be out in the car."

We find it to be of no significance that appellant was told by Officer Dadurka that he was "under arrest for the stop sign", but did not specify the offense of unauthorized use other than to indicate his concern in that regard and to advise appellant that he was being taken into custody and removed to the substation because he did not have a permit or registration. In

Brown v. United States, 125 U.S.App.D.C. 43, 46, 365 F.2d 976, 979 (1966), the court held that where police arrested a driver for a traffic violation and then acquired information giving probable cause to believe he had committed a robbery that the arrest became one for robbery also "[w]hether or not a specific statement of that fact was made to Appellant", and that a search incident to the robbery arrest was valid. Likewise, in the present case appellant's original arrest for a traffic violation became one for unauthorized use of a vehicle and a search incident to that arrest was valid.

■ This conviction must be reversed, however, because of the admission into evidence of Officer Mitchell's testimony that Officer Dadurka asked appellant, while under arrest at the police substation, "who the permits belonged to" and received the answer from appellant that they "were his girl friend's." This testimony proved to be incriminating when the owner of the permits (Margaret K. Pourhassani) testified that she did not know the appellant. *Miranda, supra* 384 U.S. at 477, 86 S.Ct. at 1629, makes it clear that such

> statements merely intended to be exculpatory by the defendant . . . are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement. · · ·

Since appellant's defense at trial was that he was handed the permits by his passenger and had no knowledge as to whom they belonged, his statement to the police that they belonged to his girl friend was incriminating "in any meaningful sense of the word".[2] The statement should not have been admitted since the custodial police questioning which produced it was not

preceded by appropriate "Miranda" warnings.

*Miranda* requires that a person in custody, prior to being questioned, must be informed of (1) his right to remain silent, (2) the fact that anything he says can be used against him in court, (3) his right to consult an attorney and have such attorney present during questioning, and (4) his right to have a lawyer appointed to represent him if he cannot afford one.

Appellee contends that appellant was given valid "Miranda" warnings. The record reveals, however, that Officer Mitchell testified thusly as to the *exact* warnings given to appellant:

> Q And what is it that you told Mr. Botts, *exactly?* (Emphasis added.)
>
> A I informed him that he didn't have to say anything to us at all. I didn't inform him of his rights formally, but I told him he didn't have to say anything until he saw a lawyer.

An examination of this testimony which represents the warnings given to appellant, reveals that he was not told that (1) anything he said could be used against him, or (2) that a lawyer would be provided for him if he could not afford one. It is doubtful whether the warning given adequately informed him of his right to consult with a lawyer and have a lawyer present with him during interrogation. In fact the only warning clearly given was that appellant had a right to remain silent.

Appellee "submit[s] that the language of the warning, coupled with the fact that appellant was no stranger to the criminal process, rendered it clearly adequate." As authority for this proposition appellee cites us to Mitchell v. United States, 140 U.S. App.D.C. 209, 434 F.2d 483, cert. denied, 400 U.S. 867, 91 S.Ct. 109, 27 L.Ed.2d 106 (1970) and Pettyjohn v. United States, 136

---

2. Appellee does not contend that the statements sought to be excluded are not "confessions" subject to the "Miranda" rule or that the statements made were not incriminating.

It is clear that *Miranda, supra* 384 U.S. at 476–477, 86 S.Ct. 1602 at 1629 applies to statements which are not technically confessions.

**242**

U.S.App.D.C. 69, 419 F.2d 651 (1969). In *Mitchell* the full "Miranda" warnings were given, therefore that case is not relevant. *Pettyjohn* is likewise inapplicable insofar as there was testimony there that the appellant had read and said he understood a card which set forth the "Miranda" warnings. In the present case it is clear that appellant was not given full "Miranda" warnings either orally or visually. As to implying knowledge of Fifth and Sixth Amendment rights from surrounding circumstances, the Court in *Miranda, supra* 384 U.S. at 468, 86 S.Ct. at 1625 said that

> we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. . . .

and 384 U.S. at 471–472, 86 S.Ct. at 1626 the Court reiterated, saying that the warnings were

> an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of [these rights] will suffice to stand in [their] stead. Only through such a warning is there ascertainable assurance that the accused was aware of [these rights].

We find therefore that the warnings administered to the appellant were not sufficient, under the standards set by the Supreme Court, to apprise him of his Fifth and Sixth Amendment rights.

Appellee also cites procedural infirmities in the manner in which appellant raised the "Miranda" objection. Appellee claims (1) that a "Miranda" objection must be made by way of a motion to suppress and that, according to Rule 12(b)(3) of the Criminal Rules of the Superior Court, such a motion must (with specified exceptions) be made before trial, and (2) that appellant failed to properly raise his objection at trial.

■ Although appellee does not refer us to any cases which so hold, and our re-

search has not unearthed such a case, we agree that as a general proposition "Miranda" objections are in the nature of motions to suppress and are therefore within Super.Ct.Cr.R. 12(b)(3). Rule 12(b)(3), however, provides an exception where "defendant was not aware of the grounds of the motion" before trial. On first making his "Miranda" objection at trial appellant was asked by the trial judge whether there had been a previous opportunity to raise the objection. Appellant's counsel replied that he was unaware that any incriminating statement made by appellant would be introduced at trial. The court then asked appellee for its position on the objection and was told that appellee would offer testimony to prove that appellant was advised of his rights. The court thereupon sustained appellant's "Miranda" objection until such time as appellee presented such proof.

The government's failure to raise an issue as to the timeliness of appellant's objection operated as a waiver thereof. Rule 51 of the Criminal Rules of the Superior Court requires that a party make "known to the court the action which [it] desires the court to take or his objection to the action of the court and the grounds therefor . . . ." The failure of appellee to object to the timeliness of appellant's objection deprived this court, as it deprived the trial court, of a record on which a determination could be made as to whether or not appellant's counsel was "aware of the grounds of the motion" before trial. Although he asserted he was unaware that any incriminating statement made by appellant would be introduced at trial, the record of the pretrial hearing on appellant's motion to suppress other evidence contains references to these statements, thereby putting appellant's counsel on notice that such statements had been made to the police. Thus although appellant's counsel may have been unaware that the statements would be introduced, he did know that they existed and he should have moved for their suppression *if* he was

aware that grounds for such a motion existed, *i. e.,* that proper "Miranda" warnings had not been given. An examination of the record of the pretrial motion to suppress reveals that nothing was said at that hearing which would have alerted counsel that proper "Miranda" warnings had not been given.

When appellant's "Miranda" objection was originally sustained, with appellee's acquiescence as to its timeliness, appellant was effectively deprived of an opportunity to make a showing that the situation was within the exception to Super.Ct.Cr.R. 12(b)(3). Finding nothing in the record to indicate that appellant's counsel was aware of the grounds of his "Miranda" objection before trial, we must assume, in the posture of this case, that he was not. Based on this assumption, appellant's "Miranda" objection, made at trial, was proper as within the exception to Super.Ct.Cr.R. 12(b)(3).

■ Appellee's second claim is that appellant never made a proper "Miranda" objection at trial. This claim is apparently based on some confusion as to whether appellant was objecting to the basic sufficiency of the "Miranda" warnings administered, or to the fact that the warnings were issued at a time when appellant had only been charged with a traffic offense, appellant contending that a second warning should have been given when appellant was questioned on a more serious charge.[3]

Appellant's original "Miranda" objection was made in the following manner:

MR. BRADBURY: Your Honor, I'd like to ask at this time for him to lay some sort of foundation that Mr. Botts

was warned of any rights he might have before they introduce any statements.

After a discussion of the timeliness of the motion as previously discussed the court said:

I will sustain the objection until it has been established that the defendant was advised of his rights. . . .

The objection was later overruled. It is true that some confusion existed as to whether, at later points in the trial, the appellant was questioning the basic sufficiency of the "Miranda" warnings or only the lack of a second warning but we conclude that "an *attempt* was made to raise the issue [and] '[w]e do not demand more of [appellant] as a condition to litigation of issues fundamental in the criminal process.'" (Emphasis in original, footnote and citations omitted.) "Any uncertainty must, of course, be resolved in favor of the appellant. . . ." Brown v. United States, D.C.App., 282 A.2d 571, 574 (1971).

■ We therefore find that appellant was not given the warnings required by *Miranda, supra.* We think it appropriate to note at this point that any inquiry into the admissibility of a confession or incriminating statements must be made out of the presence of the jury, a procedure not followed in the trial court below. 18 U.S.C. § 3501 (1970).

The denial of appellant's motion to suppress the physical evidence is affirmed. Appellant's conviction is reversed because of prejudicial error committed in the admission of incriminating statements made by him without the benefit of appropriate "Miranda" warnings.

So ordered.

---

3. On appeal appellant makes both arguments. Finding as we do that the "Miranda" warnings were basically insufficient, we do not reach the issue of whether additional warnings are required when a person becomes suspected of and is questioned about more serious crimes. We are aware of the practical problems of requiring more than one "Miranda" warning but we are also cognizant of the problem inherent in a situation where a suspect waives his rights thinking that only a minor offense is involved when in reality a more serious offense is being investigated.