**UNITED STATES, Appellant,**

v.

**David J. ORDWAY, Appellee.**

**No. 8634.**

District of Columbia Court of Appeals.

Argued Nov. 12, 1974.

Decided Dec. 19, 1974.

Paul N. Murphy, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and Andrea L. Harnett, Asst. U. S. Attys., were on the brief, for appellant.

Donald A. Kettlestrings, Washington, D. C., for appellee.

Before KELLY FICKLING and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

The government appeals from an order suppressing evidence, a revolver, dropped in plain view of the police by appellee Ordway as he stepped from an automobile at police command. Finding that appellee was lawfully ordered to exit from the vehicle, we reverse.

The record reveals the following undisputed facts. Scooter patrolmen stopped a car for a red light violation. It was driven by one Van Winkle and appellee Ordway was a passenger. When asked to display his driving credentials, Mr. Van Winkle produced an expired temporary Maryland permit and a registration certificate in the name of another. The vehicle number on the certificate varied by one digit from the number found on the car. Since the driving status of Mr. Van Winkle and the ownership of the car were in question, and since the officers were unable to make a computer verification of the registration and driver status of Van Winkle, he was directed to proceed to a nearby police station so that further investigation might be made. Van Winkle was permitted to drive the car.

Upon arrival at the station, Van Winkle parked in a public space opposite the station. Apparently the driver understood that he would accompany the police into the station and hence exited from the vehicle to do so. The officers, considering the car to be temporarily in their custody, instructed Van Winkle to ask Ordway to get out of the car as well. Van Winkle without objection complied, but Ordway strongly objected and stated words to the effect that the police couldn't search him or the car. Mr. Ordway stepped from the car only after the police informed him that "[they] were taking custody of the car at that time until [they] established whether Mr. Van Winkle had a right—to investigate . . . and he was going to come out of the car or else [they] would take him out of the car." When he did get out, one of the officers noticed that his right arm "was in a half-cocked position as if he were holding something to his right side," and also "noticed a great large bulge unusual in size beneath his coat". When the officers ordered Mr. Ordway to "freeze", he removed

his hands from his sides and stood erect. A black leather gun belt containing a revolver and six rounds of .38 caliber ammunition fell from the coat to the ground in unobstructed view of the police.

In urging suppression of the revolver, it is contended that although the revolver was dropped in plain view of the police, this disclosure of the weapon occurred only as a result of an unlawful order by the police to exit from the automobile. In so characterizing the order, Ordway stresses that he got out of the car only after the police threatened to impound it. It is argued that the police had no authority to impound the automobile and thus no authority to order him from the vehicle. The record reveals that impoundment of the vehicle entailed more than taking temporary custody of it. The former required moving the car to an impounding lot.

■ Ordway's argument fails because of a false premise. It is presumed that the police had no legal justification short of the right to impound the automobile pursuant to which they could order him to exit. We hold the temporary custody to be reasonable and thus lawful.

It is not necessary to decide whether impoundment of the car would have been permissible at this stage of the investigatory process. It is enough to conclude that ordering Ordway out of the car without otherwise restricting his liberty was a reasonable course of police behavior aimed at temporarily securing both the automobile and its contents pending a determination that the driver's credentials were regular. Additionally, Ordway concedes that there is no evidence that this effort to secure the automobile and its contents was a subterfuge to allow an exploratory inventory search such as this court condemned in United States v. Pannell, D.C.App., 256 A. 2d 925 (1969).

■ Ordway also contends that there was no reason why adequate security could not have been provided without removing him from the car, pointing out that the police had Mr. Van Winkle's keys and that no showing was made that Ordway had access to a second set. At one point the trial judge's reasoning took a similar tack. He suggested that the police could have posted a guard. Courts do not, however, scrutinize the tactical wisdom of a given course of police action and condemn one in favor of another so long as the course of action taken was reasonable. Bailey v. United States, D.C.App., 279 A.2d 508, 510 (1971).

It is also necessary to look to the extent or severity of the intrusion when dealing with a police-citizen encounter falling short of a formal arrest. Terry v. Ohio, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It is apparent here that the intrusion was different and even less severe than in the so-called "stop" cases. Ordway was simply told that he could not remain in the car during the investigation. His freedom was not otherwise curtailed. "It cannot be said that the accused was so inconvenienced or restricted that the delicate balance between individual freedom and legitimate police activity has been unduly weighted against him", United States v. Lee, D.C.App., 271 A.2d 566, 568 (1970).

Having determined that the order to exit from the car was not unlawful, we find no residuary Fourth Amendment problem involved in the seizure of the weapon. The officers conducted no search of appellee but merely observed the revolver fall within their plain view where, as discussed above, all parties were lawfully positioned. *See* Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

Accordingly, the order suppressing the revolver is reversed and the case remanded for further proceedings.

So ordered.