Sebastian M. McMILLAN, Appellant,

v.

UNITED STATES, Appellee.

No. 86–346.

District of Columbia Court of Appeals.

Argued May 19, 1987.
Decided June 23, 1987.

---

Mary Lou Soller, Public Defender Service, with whom James A. Klein and Jennifer P. Lyman, Public Defender Service, Washington, D.C., were on the brief, for appellant.

Joan C. Barton, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Helen M. Bollwerk, and Mark H. Dubester, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY and ROGERS, Associate Judges, and PAIR, Senior Judge.

ROGERS, Associate Judge:

In this appeal from his conviction of possession with intent to distribute phencyclidine ("PCP"), D.C.Code § 33–541(a)(1) (1986 Supp.), appellant Sebastian M. McMillan contends that the seizure of evidence by the police after a search at the police station of the glove compartment of his motor scooter was unlawful, and consequently, the trial court erred in denying his motion to suppress. Specifically, he contends that the impoundment of his motorcycle was not authorized under police regulations either as a seizure of evidence, as storage of a prisoner's property, or in order to facilitate a search for indicia of ownership. We affirm.

## I

▪ Lawful possession is a prerequisite to an inventory search, *South Dakota v.* *Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976) (community caretaker functions); *United States v. Pannell,* 256 A.2d 925 (D.C.1969), and it "exists where there is statutory authority or regulatory authority for impoundment of a vehicle, the police have probable cause to believe that the car contains contraband, or a person consents to such possession or is unable to make other arrangements for disposition of the automobile." *Madison v. United States,* 512 A.2d 279, 281 (D.C. 1986); *see also Hill v. United States,* 512 A.2d 269, 273 (D.C.1986).

Part I. B. 2. of the Metropolitan Police Department regulations governing "Automobile Searches and Inventories," General Order 602, No. 1, provides that when "an officer has probable cause to believe that a vehicle is a fruit, instrumentality, or evidence of a crime, he [or she] shall take the vehicle into police custody...." While these regulations refer expressly only to "automobiles" and "vehicles," this court has applied the same procedures to uphold a search of a motorcycle. *Schwasta v. United States,* 392 A.2d 1071, 1076 (D.C. 1978). A motor scooter poses the same exigency as an automobile—mobility—and its seizure serves identical purposes, perhaps to an even greater degree. Moreover, "the search may nonetheless be constitutionally reasonable if it was reasonable under the Fourth Amendment." *Madison, supra,* 512 A.2d at 282 (citing *South Dakota v. Opperman, supra,* 426 U.S. at 364, 96 S.Ct. at 3095; *Cooper v. California,* 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)).

▪ The evidence clearly demonstrates the arresting officer had probable cause[1] to believe that appellant was operating the motor scooter without authorization and that the glove compartment would contain indicia of ownership.[2] Sergeant Gary

---

1. Although the trial court did not use the language of probable cause in discussing its conclusions, counsel directed their arguments to this issue, and "[i]t is well settled that an appellate court may affirm a decision for reasons other than those given by the trial court." *Alston v. United States,* 518 A.2d 439, 440 n. 2 (D.C.1986). The trial court made sufficient factual findings for this court to conclude that probable cause existed.

2. Accordingly, we need not determine whether an inventory search was justified on any other grounds. We note, however, that Officer Glenn had no clear recollection as to whether appellant either consented to the movement of his

Glenn of the Metropolitan Police Department observed appellant operating a motor scooter without protective eyewear or a windscreen in violation of 18 DCMR §§ 743, 744, 2215.4, 2215.5 (1981), and signaled appellant to pull over to the side of Pennsylvania Avenue, S.E. After appellant complied, Glenn approached appellant and asked him for his license and registration.[3] Appellant patted his clothing, glanced inside his glove compartment, and indicated that he did not have either document. Glenn then sent appellant's name and date of birth through the WALES computer system, which contains information pertinent to law enforcement, and learned that appellant's driver's permit had been suspended. (Glenn also noticed that the motor scooter had temporary tags from Virginia, but he did not run this information through the computer system because he knew from prior experience that the WALES system did not record temporary registrations.)

After appellant had been arrested for driving with a suspended license, D.C.Code § 40–302(e) (1986), and taken to the First District police station, Glenn drove the motor scooter to the station for the stated reasons that (1) he "still did not know who the owner of the motor scooter was and therefore did not know whether or not Mr. McMillan had permission to operate it," and (2) he did not think it would be safe to leave the motor scooter parked on the street. A search of the glove compartment while the scooter was in the parking lot behind the police station revealed foil packets containing PCP and a semi-transparent, pie-shaped plastic container containing more PCP, a set of scales, and a spoon.[4]

In *Botts v. United States,* 310 A.2d 237, 240 (D.C.1973), this court stated that "the absence of *both* a registration and a driver's permit, in a situation where the police are unable to verify ownership by other means such as a computer check, provides probable cause to believe that the vehicle is being used without authorization." *See also Punch v. United States,* 377 A.2d 1353, 1357 n. 5 (D.C.1977), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *Johnson v. United States,* 309 A.2d 497, 498 (D.C.1973), *cert. denied,* 416 U.S. 951, 94 S.Ct. 1960, 40 L.Ed.2d 301 (1974). Surely, if there was probable cause to arrest in *Botts,* the situation here, where the officer is legitimately concerned with protecting what is potentially the property of another, provides probable cause[5] capable of supporting impoundment. The verification disability in *Botts* involved an inoperative central police computer. Here, the omission of temporary registrations from the WALES system is an analogous limitation. Because a legitimate question regarding the ownership of the vehicle had been raised,[6] it was reasonable for the police to conduct further inquiries, by telephone or other means, after the scooter had been brought to the station where ap-

scooter or was given an opportunity to make other arrangements for its disposal. Reliance on the prisoner property rationale would accordingly be suspect. *See Arrington v. United States,* 382 A.2d 14, 18 (D.C.1978).

3. D.C.Code § 40–105(a)(1)(C) (1986) (requiring driver to have registration available while in vehicle).

4. Appellant was indicted for possession with intent to distribute PCP, and possession with intent to distribute cannabis, D.C.Code § 33–541(a)(1) (1986 Supp.), and for possession of drug paraphernalia. *Id.* § 33–603(a). After the trial court denied a pretrial motion to suppress evidence and statements, appellant entered a conditional plea of guilty, Super.Ct.Crim.R. 11(a)(2), to the charge of possession with intent to distribute PCP, and in exchange the government dismissed the other two counts. The court sentenced appellant under the Youth Re-

habilitation Act, D.C.Code § 24–803(b) (1986 Supp.), to a six-year term of incarceration.

5. The suspicion is arguably increased by Officer Glenn's testimony that the appellant "opened the glove compartment, just slightly.... From one to three inches, just opened it and peered inside ... from one to three seconds." Appellant did not put his hand in the compartment.

6. Appellant's citation to *Arrington, supra* note 2, 382 A.2d at 17–18, is inapposite. There, the court held that driving with a suspended license and "furtive" gestures did not constitute probable cause to search a brown bag under the front seat. The ownership of *the vehicle* was apparently not in question, and there is no reference to the vehicle's registration or to a computer search.

pellant was being detained. *United States v. Ordway*, 329 A.2d 776, 778 (D.C.1974) (This court will not "scrutinize the tactical wisdom of a given course of police action and condemn one in favor of the other so long as the course of action taken is reasonable."); *see also Colorado v. Bertine*, —— U.S. ——, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983).[7] Alternatively, since Glenn had immediate probable cause to support a search for indicia of ownership, he could have waited until arriving at the police station before conducting that search. *Botts, supra*, 310 A.2d at 239; *Arrington, supra* note 2, 382 A.2d at 17; *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Accordingly, the denial of the motion to suppress physical evidence was proper, and the judgment is

*Affirmed.*

---

7. This court similarly does not require that the police officer fully appreciate the justifications for his or her actions so long as they are in fact supported by reasonable grounds. *United States*

*v. McCarthy*, 448 A.2d 267, 271 (D.C.1982); *Bell v. United States*, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86 (1957), *cert. denied*, 358 U.S. 885, 79 S.Ct. 292, 3 L.Ed.2d 242 (1958).